We'll hear argument next this morning in Case 15-1248, McLean Company v. the EEOC. Ms. Hope. Mr. Chief Justice, and may it please the Court, the language and structure of the statutory scheme, the tradition of appellate review, and the sound administration of justice all counsel in favor of reviewing EEOC subpoena enforcement decisions for abuse of discretion. First, under the statutory scheme, the EEOC's investigative authority is not plenary, like other agencies, but is cabined by the statutory limit of relevance to the charge under investigation, as this Court said in Shell Oil. Because this inquiry is extraordinarily contextualized, the District Court's fact-intensive determinations should be reviewed under a unitary abuse of discretion standard, as this Court has held. Second, the tradition of deferential appellate review is robust, not only for administrative subpoenas, but also for close analogs, such as search warrants and grand jury subpoenas. Third, the District Court is the judicial actor best positioned to decide the issue for any number of reasons that this Court articulated in Pierce and is applied in subsequent cases. The fact-intensive and context-sensitive nature of the inquiry the case is Pierce, you mentioned, Rule 11 is another. The district proceeding is going on in the District Court. The District Court judge is intimately familiar with the case, but a subpoena enforcement is different. It comes to the District Court cold. He knows nothing about the case. He's not, as in Pierce and in Rule 11, thoroughly familiar with the parties and the controversy. It just is an application to enforce a subpoena. I think, Your Honor, I think this case shows that an action to enforce a subpoena is more like those. And this Court in Highmark talked about the District Court living with the case. In our case, the District Court had experience not only with the parties in the context of the subpoena at issue, but also with a parallel proceeding that the agency brought under the ADEA and had experience in that. So I think this case shows that there are instances where the District Court does live with the case longer. But even if that were not so, Justice Ginsburg, I think the other factors in Pierce and Kuhn and Kutter and Gell and the other cases that this Court has articulated and given, put meat on the Pierce factors, I think perhaps the most important is the fact-sensitive, context-sensitive nature, which I think is very much like  with a fact-sensitive leading facts, multifarious facts. According to Judge Watford, the pivotal issue is a legal one. That is, what does relevance mean within the context of the EEOC's investigatory authority? He treated that as a question of law. What is the scope of relevance? Your Honor, I think the answer to that question lies in what is, I think, critical here, both with respect to the proper standard of review and the ultimate resolution. And that is, in this case, relevance is determined not in the abstract, but in relation to the charge under investigation. So the district court in this circumstance, just like district courts do when they are determining relevance in the Federal rules context, is looking at the language of the charge in the context of the facts before the district court and the universe of the investigation as a whole. And I think that's likely why, Your Honor, every court of appeals, save the Ninth, has reviewed subpoena enforcement decisions for abuse of discretion, because there is a closing analogy. Ginsburg. But they would say, if it's a question of law, if the district court got the law wrong, that is ipso facto an abuse of discretion, because he has no discretion to misapply the law. Absolutely, Your Honor. And I believe that is one reason, perhaps the most important reason, why this Court, I think most clearly in Cooter and Gell, but also in Kuhn and other cases, embraced a unitary standard of review for abuse of discretion, because an abuse of discretion standard does allow a reviewing court to correct errors of law and errors of fact while still affording appropriate discretion to the district court. Can you clarify for me exactly what's on appeal? There were essentially two rulings by the district court, one on the pedigree information sought, the name, address, Social Security number, et cetera, of the people who had taken the strength test at issue. And a second part, a disclosure of the reasons for the termination of the employees who had failed the test. As I read the record below, the district court did not give a reason for denying the second request. And the court of appeals basically said, we can't, under any standard of review, credit a non-reason for denying something, so we reverse the district court on that. Are you challenging that particular ruling? That reversal of that part of the request? Well, what the Ninth Circuit did, and thank you for the opportunity for the clarification, is it reversed and it actually remanded for the district court to make that determination in the first instance. And I think the ---- So are you reversing that? Are you appealing that part of the remand? No, Your Honor, because we did not advance an argument for relevance or for irrelevance as to that. That was an undue burden, an undue burden. All right. So the only thing that's at issue here is the district court's failure to order the release of the pedigree, what I'm calling the pedigree information. That's correct, because the Ninth Circuit has already reversed and remanded for the district court to make a proper fact-finding in the first instance. And the second question. On the second. And our position is that one difference that an abuse of discretion standard makes is that under an abuse of discretion standard, as opposed to the de novo standard that the Ninth Circuit applied, the proper course for a holding that the district court did not apply the correct legal standard, as the Ninth Circuit held here, we disagree. But even if that were the case, the proper resolution is to reverse and remand for the district court to either clarify what it did and explain, no, that wasn't what I was doing, I did apply the proper standard, or to apply the proper standard in the first instance. Ginsburg. Why would you remand to the district court? Because it went back to the Ninth Circuit. The Ninth Circuit could very well say, we decided a question of law, the scope of what's relevant. We had a footnote that says we applied de novo review, that's our precedent, but nothing in the rest of the opinion seems to turn on that. It seems that the Ninth Circuit has made a ruling of law. If you remand it to the Ninth Circuit, they might, I expect they would say, we made a ruling of law. And whether it's abuse of discretion, it's the same result, because the district court made an error of law. They might say two things, Your Honor, and we don't know. And the footnote, I think it's certainly not dispositive, but I think it is telling that the Ninth Circuit did not go on to say, well, we would have reached the same result under either standard. But again, under the de novo standard that the Ninth Circuit applied, it was stepping into the shoes of the district court and making a determination of relevance in the first instance. Our position is that even if, under an abuse of discretion standard, even if the Ninth Circuit believed that the district court made an error of law, the proper course under the Ninth Circuit's own precedent would be to reverse and remand for the district court to apply the proper legal standard in the first instance. Breyer, I've always been somewhat uncertain about that. You used the word relevance, but a fact is relevant if its existence makes the conclusion more likely than if it didn't exist. Now, under that standard, I guess the EEOC or any other agency could require any company, no matter how big or how small, to turn over everything that it's ever had, because they might find something in there that would make discrimination or failure to pay more than not. So we find that language, and we also find language that say, of course, they can't authorize a fishing expedition. Well, what's the right standard? What happens, for example, in a subpoena? What happens? What is the standard? Anything? They can just go into your house and, I mean, you know, absent the Fourth Amendment protection, go to a business and say, we want every document you've ever had. What stops that? This — what stops that, I think, are two features of the statutory scheme here. And the first feature is that the standard of relevance is not free-floating. It is relevant to the charge under investigation. Breyer. No. Well, relevant to the charge that a person has already brought. I mean, can the EEOC say, you know, we have an idea there are companies in the United States that are violating, and there could probably are, they are violating various anti-discrimination things. So what we want to do is just go to every company in alphabetical order and interview every employee. Can they do that? No, Your Honor. Because? Because — and I think what Your Honor is positing is a commissioner's charge. Yes. And the EEOC has its own regulations which govern what must be in a commissioner's charge. And that was actually at issue in the Seminole Shell Oil case that this Court decided. So there has to be enough information. So the language that this Court used in Shell Oil was relevant to the charge under investigation, and what relevance means in this context. And I don't know that the language is much more clear, but it said that it tends to shed, can reasonably be expected to shed light on the charge under investigation. Where does that come from? That comes from Shell Oil, and that's the language that courts have used to articulate it. Can reasonably be expected to shed light on the charge under investigation. Yes, Your Honor. So the law is fairly clear that when the EEOC asks for a piece of information, they have to be able to meet that standard. Yes, Your Honor. And it's the EEOC's burden to meet that standard. And again, Your Honor, I think that line of questioning demonstrates how contextualized the inquiry is in this context. Could you briefly explain what you understand to be the charge here and why the so-called pedigree information is not relevant to the charge? Certainly, Your Honor. And the charge here, we don't think, and to use the language that I was using with We don't think that anything the evaluation taker knows or has experienced in this case can shed light on the charge under investigation for two reasons. First, the evaluation itself does not mimic job duties. It was developed, administered, and scored by third parties using computer modeling and labor department job classifications. And second, and again, this goes to the very fact-specific nature of the examination, this is an isokinetic evaluation. It's taken on a machine, like an exercise machine, that measures resistance, range of motion, and speed. And it provides resistance equal to the force that you generate. So the charge here is not relevant to the charge under investigation for two reasons. All that may be so, but how do you answer Judge Watt for a simple point? And if you're dealing with a test, and both men and women have failed it, when you want to ask the test taker what happened after you failed the test, were you kept on the job? And the same question, put that question to men and women. If it turns out that the men who failed the test are sometimes kept on, but all the women who failed the test are discharged, that would certainly support the claim of gender-based discrimination. And, Your Honor, in this case, McLean voluntarily provided all of the information with respect to, at that time, the over 14,000 evaluation takers to allow them to be tested. Except no name, so there's no way that the EEOC could contact these people and ask the question that Judge Watt proposed. So you flunked the test. What happened to you after? Your Honor, the information did include gender, and it also included the passing scores and the scores that did not meet the requirement, and whether any adverse employment action took place with respect to that individual. So to answer that question, Your Honor, which we don't disagree would be relevant, that information has already been provided to the agency. So the only sort of remaining question, and I think this is what my friend from the government presses on, is, well, we need to talk to them to find out whether the test serves a legitimate business purpose. And I would share your interest in that. Sotomayor, I'm sorry. I thought I understood that you disclosed who took the test, who failed it, and whether someone was later terminated, but not the reason for the termination. That's correct. And that is the termination that is back that has been remanded for the disreport. Sotomayor, is the reason for termination relevant to the charge? If you're terminating only women for failing the test, but keeping men and maybe some terminating later for some other reason, doesn't that show that there's a problem? Your Honor, we have an advanced irrelevance argument with respect to the reasons for termination. Our argument as to that is undue burden. And if I may reserve the rest of my time. Sotomayor, where do you get the undue burden? But you can answer on rebuttal. Thank you, Your Honor. Thank you, counsel. Ms. Kopner. Mr. Chief Justice, and may it please the Court. Historical and functional considerations strongly support an abuse of discretion standard of review here. And with respect to the functional considerations, if I could turn to Justice Ginsburg's question about why district courts are better situated to address this question, even though it comes to them on a largely documentary record. We think there are a couple of reasons. The first is that this Court indicated in Buford that when a district court just sees a lot more of a fact-specific question, the district court is often going to have more expertise in answering that question. And this Court has also indicated that when a determination is very case-specific, the costs of appellate review are unlikely to justify the benefits of the added time and expense that appellate review takes, because a decision on case-specific facts is unlikely to yield substantial benefits, substantial guidance for future cases. And we think those concerns are really accentuated here under administrative subpoena enforcement schemes, because a central purpose of those schemes is to get a quick disposition so that the investigation can move forward. And that's particularly true under Title VII, where this Court has repeatedly emphasized in Shell Oil and in the University of Pennsylvania case that delay frustrates the objectives of the statute. Ms. Kovner, here, the question whether to enforce the subpoena is the whole ball of wax, right? This is an action to enforce the subpoena. So that question is the end-all and be-all of the case. Are there any other contexts in which we use an abuse of discretion standard for not a subsidiary or an ancillary finding or, you know, a partial finding, but for the finding that decides the case? Yes, there are. I mean, so we think the most analogous context to the administrative subpoena context is other subpoena contexts. There, you're deciding the whole ball of wax, but the decision of the district court is reviewed for abuse of discretion. So, example, this Court's decision in Nixon says trial subpoenas, pretrial subpoenas under Rule 17 for information induces take-em, that's reviewed for abuse of discretion. Grand jury subpoenas, courts of appeals, uniformly review for abuse of discretion. With respect to other types of determinations, under the Fourth Amendment consent decisions, whether somebody consented to a search is going to be dispositive, but that's reviewed deferentially for clear error. With respect to abuse of discretion, courts of appeals apply abuse of discretion to, as Petitioner points out, venue decisions. It's going to be dispositive of the case if there's not venue. So there are a number of decisions that decide the case, but they're reviewed for abuse of discretion. As Justice Ginsburg observes, it's true that legal questions may come up and may be what the actual dispute is about in a subpoena enforcement case, but even under an abuse of discretion standard, that piece of the inquiry is going to be reviewed. Sotomayor, could you please tell me, walk me through exactly what you think the government is doing when it makes a decision to enforce a subpoena. What are the legal steps? What are the factual steps? I'm not quite sure. And then embodied in that is your Petitioner says there's an undue burden part of this test as well. I don't know where that comes from, because it certainly doesn't come from Morton Salt or Shell Oil. So you tell me what you think is at issue. Yes, Your Honor. We think there are five questions that the court is answering when it decides. And tell me where you're getting that from. Yes. I mean, your standard, okay? Yes. So four pieces of it come from Shell Oil, and they are that the charge is valid, that the information that's being sought is relevant to the charge, that the subpoena is not too indefinite, and that there's no improper purpose. Now, the court in Shell Oil didn't mention this unduly burdensome piece of the inquiry, but the court relied on the Morton Salt standard, and Morton Salt suggests that that unduly burdensome inquiry exists. So courts of appeals have uniformly said there's an unduly burdensome overlay on that as well. So those are the five pieces. We think that all five of them involve the application of law to particular facts. They involve case-specific determinations that involve looking at a particular charge, a particular subpoena, considering the relationship between those things, and then considering any submissions about burden that a company makes. So we think these are all the kind of case-specific determinations that are particularly well-suited to district courts. And if I could turn to the second piece of the case, the Court certainly has discretion to just address the standard review question and then remand, but we think it's entirely appropriate here to simply affirm the decision of the court of appeals, because we think this is a relatively straightforward relevance question where the district court just made a legal error in not applying the test that Justice Breyer raised a question of, could this information shed light on the charge, but instead demanding more, demanding that essentially there be a necessity for the information, and that's just not the right legal test. And as the court of appeals indicated, it's not the right legal test. Ginsburg. Could you explain to us your view of how this information, the names of the test-takers, will shed light on the charge? Yes. So we think there are two ways. The first has to do with disparate impact and the second has to do with disparate treatment. Maybe I'll take the second one first. As Your Honor observed, as Judge Watford said, in order to figure out whether disparate treatment occurred here, you need to talk to test-takers and see whether male and female test-takers were treated the same. And if I could just clarify why the existing record doesn't shed light on that. You can see at page 33A of the Petition Appendix what the district court ordered to be turned over, and it's whether an adverse employment action was taken within 60 days. But what we don't have is, was that action termination, which is the action that occurred here, and what was the reason for the termination? And the company is – there's obviously litigation ongoing, but the company says that turning that over would be an undue burden. So in order to figure out what happened with these applicants, we really do need to talk to the applicants and the test-takers. Breyer, that's the part I don't understand. I mean, it's – there's a woman who says, I took a test, physical, and I failed it, period, and she was terminated. She doesn't say that they're treating women more harshly. She doesn't say that this isn't a qualified reason. Okay? So you could have that every day of the week. People are terminated for failing tests, and they could come in and complain. Now, at that point, the agency doesn't just say, let's find some samples, let's do a little sampling here and see how this is being applied, let's go invite – let's interview a few people at random and see what these tests are about. Rather, they say, we want to talk to every single employee in the company. Well, I mean, hey, what's the basis for that, on the basis of that information? Why isn't that an undue burden? Kagan. Well, so I think there are two pieces. One is, is it relevant, and the second is, is it an undue burden? With respect to whether it's relevant, I think if you look at page 39 of our brief, this Court has said time and again. Of course, it's always relevant when anyone complains about anything to go and see if really there's something suspicious going on by interviewing every single employee, even if there are 500,000 employees. You can't say that an answer might not make it more likely. That's why I was looking at undue burden. And I would think maybe you have to do something before you decide to spend – require the company to spend millions of dollars to get every single employee on tape or something. I mean, something more than that. That's what I want to know. How does – what about that? That's right. So I think whenever the information is relevant, and I think, as Your Honor alludes to, it's clearly relevant to interview other employees and see if this policy is being administered the same, the overlay that Congress created is that overlay of, is it burdensome to the company to give you that information? And here, I think it's pretty clear why Petitioner abandoned the argument that it's an undue burden to produce the pedigree information. The names and the social security numbers of these individuals were already in the records that the company had of the tests. The company stripped out that information. It went to added burden to not provide us with the information to identify these people by name and social security numbers. Additional information like addresses was also already in company databases with respect to all the people who were employed by the company. So – Roberts, I would just say, counsel, there is a bit of tension between your position that abusive discretion is the appropriate standard because the district court is more familiar with the proceedings and all that, and that we should, you know, make a ruling on whether there was an abusive discretion as a matter of law without any intervening review. Well, we think that in the narrower class of cases where the decision rested on an actual legal error and where it's clear what the appropriate relevance determination is, it's appropriate then for a court of appeals or in this case, this Court. Well, a relevance determination is something that is pretty fact-intensive. That's right, but we think that this is actually a relatively clear case for the reasons that the court of appeals set out. We're seeking the basic. I suppose I'm left at the moment. I'll go back and read it. I just don't know. It's something when I read this struck me, is I haven't seen something like this where all that happened was somebody come in in one place and says I took a test and failed it, and then they start to interview everybody in the whole company. I mean, hundreds, thousands. I mean, something struck me as odd about that. So when the district judge then said this is an undue burden or they can't do it, they have to have more than this, I was reluctant to say this is an abusive discretion, even though he thinks, you know, it's the right thing to do. I mean, that's what judges are there for in the district courts. So with respect to the geographic scope, Your Honor, I think it's really important that we didn't initially seek this information with respect to the entire company. We sought information that was limited to information about the test that was complained about at the particular facility in question, in Goodyear, Arizona, where this person was employed. It's only when the company came in and said our defense here, our explanation is we have a nationwide policy, and we are using this test in all of our facilities, that we sought information in a broader geographic scope. And if I could just touch on the one other reason why this information is relevant, it's with respect to a disparate impact theory. The crucial question under a disparate impact theory in this case is likely to be, is this practice justified by business necessity? And in order to know that, you have to know whether this strength test, which seems to be exerting a substantial disparate impact on male and female employees, is actually representing the skills that you need in order to perform these jobs. Because if this is a strength test that doesn't correlate to the work that you have to perform as an employee, then it's not justified by business necessity. And interviewing people who actually do these jobs is a way to determine that. Could you say a little bit, Ms. Kovner, about how it is that you're persuaded that this Court did make a legal determination that was effecting its judgment as opposed to maybe using some careless words, but was really making a relevancy determination? Yes, Your Honor. So I think the key portion of the district court's opinion is on page 29 to 30 of the petition appendix. And what the Court says is, I'm not persuaded this is relevant, and the reason why I'm not persuaded this is relevant is because there's an additional step that the agency could take to investigate whether this charge is discriminatory first, and that's to conduct a statistical analysis and use statistical information to shed light on the charge. So we think that's just an incorrect understanding of relevance. It's a necessity test, and this Court has pretty clearly rejected the necessity test. It's not the test in Shell Oil. It's a test that this Court rejected in the University of Pennsylvania, where the Petitioner there was looking for a much narrower necessity test, and the Court said that's not just what the statute authorizes. If there are no further questions, thank you. Roberts, thank you, counsel. Mr. Kennard. Mr. Chief Justice, and may it please the Court, there can be no abuse of discretion review if the district court has no discretion. Congress vested the EEOC, not the district court, with the discretion to determine if particular relevance or particular evidence is relevant to the charge. That discretion cannot reside in two places. The D.C. Circuit said it best. Where deference is owed to the agency, including in the application of law to fact, it is, quote, analytically impossible, unquote, for the court of appeals to defer to the district court if the district court disagrees with the agency. That case is not cited in our brief. I did supply the parties with a copy. It's Novicki v. Cook, 946 F. 2nd, 938, 1991. And why is the parties' double discretion theory analytically impossible? So the government says, with regard to relevance, that the district court must enforce the subpoena unless the EEOC is obviously wrong, and the court of appeals must uphold that determination absent an abuse of discretion, i.e., the district court must be obviously wrong in holding that the EEOC is or is not obviously wrong. That framework is not only illogical, it's unworkable. If the district court disagrees with the EEOC and the court of appeals must defer to the district court's putative discretion, then the court of appeals denies the EEOC the full measure of its discretion. Conversely, if the district court upholds the subpoena, then the court of appeals gives excessive deference to the EEOC. It cannot reverse simply because the EEOC is obviously wrong. It's only if both the EEOC and the district court are obviously wrong. Congress did not adopt that scheme. Instead, Congress prescribed a standard that denies discretion to the district court. Section 6 of the APA provides that the district court shall sustain an agency's subpoena if it is in accordance with law. That is typical judicial review, where the court, district, and appellate police the lines in which the agency must operate. Kennedy. I'll look up the cases, but in an evidentiary case, civil case or a criminal case, the question of relevance, I suppose at the end of the day relevance is a legal matter, but don't we give substantial deference to the trial court in order to administer the trial in an orderly way? Don't we give substantial deference to their relevance ruling? And how is that applicable here or inapplicable? It's applicable and it supports my position about double discretion. Relevance is a judgment about the relationship of certain evidence to a claim. And because it's a judgment of relationship, there always is in the primary decision maker some discretionary judgment about how to apply the legal standard. In discovery and trial evidence, that primary decision maker is the trial court, and therefore its determinations of relevance are reviewed for abuse of discretion. In this context, the primary decision maker, the one with discretion, is the EEOC. And so it is its discretion that is reviewed simply for whether or not it has crossed the legal lines. A district court does not have discretion to tell an independent branch of government, conducting an investigation, you can't have that evidence. It can simply refuse to enforce an illegal subpoena. And two-stage review under the APA. Robertson, I'm sorry, why isn't that telling them they can't have that evidence? It's telling them because they're drawing the legal line and saying you can't cross that line. That's different from exercising discretion about whether evidence is relevant. That discretion belongs wholly to the EEOC. Roberts, well, if the line depends on relevance, it's exactly the same thing as telling them whether it's relevant or not. Well, that's why the courts have adopted a standard of obviously wrong. Obviously wrong is not a discretionary determination. So the district court really has no discretion. And in two-stage review under the APA, it is always the case that the district court and the appellate courts apply the same standard of review to agency action, whether deferential or not. But here, under the in accordance with law theory, that means this is illegal or not. That should be the same standard applied in the district court and in the court of appeals. It's a legal line, a legal determination. And nothing in Title VII departs from that. Now, the parties have said that this is a factual determination, fact-intensive determination of relevance. It is not. The EEOC has submitted here no declarations on relevance. It was all attorney argument in a motion. And the reason is that relevance is a conceptual, especially in the agency subpoena context, is a conceptual determination of the relationship to the charge of a category of evidence of unknown content. And so it is not making a factual determination from evidence. It's a legal theory of the potential value of the evidence to the EEOC. Alito, what about the nature of the charge? The contours of the charge, isn't that factual? No, that's legal. I think that it's looked at the contours of the charge in a particular case is a legal question. Absolutely. You cannot look at extrinsic evidence. It's just analyzing the text of the charge. And I think the courts are fairly consistent on that. So what about the burden on the other party? It would seem to me that the district court would have a considerable degree of familiarity with the nature of the defendant's operations, how burdensome it is in light of what they've produced so far. And that's an analytically separate inquiry. That's a Fourth Amendment inquiry, Justice Sotomayor, you asked, and we quote, it's the Donovan case says that the undue burden is part of the Fourth Amendment requirement. She said Morton Salt and it doesn't have to be constitutional, I would think. Regardless, I think it's something of a red herring. I don't think an agency, even if it's constitutional, could impose undue burdens. I can't imagine law to the contrary. So isn't that what about the question was asked? Well, respectfully, Your Honor, I think that's not true. All right. Okay. Is the answer just that, well, that's constitutional, therefore it doesn't count or whatever? Well, it's constitutional and constitutional should be de novo. But my point is that Congress has said the EEOC shall have access to this evidence on two conditions, neither of which have anything to do with burden. So in other words, in your view, the law is that an agency, when somebody complains about anything, can go and ask if that's anywhere in the agency, anywhere in the company, and ask every single employee and require them to spend millions of dollars, because after all, it is relevant. Is that your answer? No, there's a Fourth Amendment limitation on that, Your Honor. Fourth Amendment, let's take, I mean, there's some places don't, Fourth Amendment, and therefore the Court has to review it. Well, that's right. And the Fourth Amendment determinations are de novo. This Court can't do that. Well, I see how we do it, frankly. I mean, you know, there are thousands of district courts. They hear these things at length. We don't have the time to do all that. We're looking at a cold record. They have the lawyers in front of them. The lawyers can explain what went on at the agency, and they can take their time. You, unfortunately for us, because you wrote an excellent brief, will only have about 20 minutes or so. And so did you see the difference? Well, to be clear, Your Honor, the fact question of what the burden is, it is reviewed for clear error, just like in O'Neill's historical fact questions. And by the way, that's minimal proof. It's just the cost in terms of staff or resources to produce the information and what's the effect on operations or finances of the company. The point there is that the Court would take the finding as given for clear error. But the constitutional rule, is this excessive? Is it constitutionally excessive, relevant to the public purpose? And like all constitutional excessiveness determinations under Bacikagian or Cooper Industries, that's de novo. The other elements of the Fourth Amendment claim, improper purpose, this Court said in Clark, that's a question of law. And then specificity of the subpoena, that's a question of law. There is no constitutional issue decided here, but relevance has been decided. And I would only point out a point. Sotomayor, I'm sorry, under 401, which is a discovery rule, we review that for relevance, for abuse of discretion. Yes. Why is that any different here than it is under Rule 401? Because the district court has the – is the initial decisionmaker in determining relevance, because relevance is inherently a discretionary judgment about the relationship of evidence to a claim, there always will be, with the primary decisionmaker, discretion. It's the EEOC that has that discretion here. So if we take the – so you don't have a problem in saying that it's within the discretion of the district court reviewing the EEOC to decide relevancy? No. I'm saying – And it's only the court of appeals, then, who has to review it as a matter of law? De Novo, I'm a little – I'm sorry that I wasn't clear. The EEOC makes the initial determination of whether particular evidence, such as pedigree information, is relevant to a charge. They're the ones that make that discretionary determination. When it – but discretion can only reside in one place. And when it comes up to the – Sotomayor, it wasn't under 401. Under 401, it resides both in the district court and in the court of appeals as an abuse of discretion standard of review. No. The court of appeals, as I understand it, the district court has discretion, will rule it relevant or not, and the court of appeals will say, is that an abuse of discretion, right? And it's notable here that Congress actually denied abuse of discretion review to the district court. It didn't use the section 10E, arbitrary and capriciousness, abuse of discretion or in accordance with law. It limited the district court's inquiry for subpoena enforcement to whether it was in accordance with law. And the legislative history is quite clear that they did it so that they wouldn't revisit the discretionary determinations of the district court. You're only preventing illegal action. And that's why in two-stage review, a district court always applies the same standard as the court of appeals in review of agency action. Kagan. Mr. Cunard, do you think that your whole argument might be taking the words abuse of discretion a bit too literally? In other words, your idea is that you can never use that term unless there is some discretion, some real choice. Right. And, you know, it might be that sometimes we use that term when that's not really true, but what we just mean to say is that a certain amount of deference should be given because the we're at the right institution to make a particular kind of judgment. Right. Well, I think if you're looking to institutional – first of all, I think there has to be discretion to be abuse of discretion. I think there has to be. But if you were looking at just a functional analysis of, you know, how you draw the line to cabin the EEO's discretion, there's no institutional advantage. This appellate court can construe the charge, construe the subpoena, and resolve the legal claims of the potential value of unknown evidence just as well as a district court. These are simply not factual determinations. Pedigree information is a perfect example of that, because there should be – pedigree information is basically saying it's relevant to interview test-takers if you're investigating a charge of discriminatory testing. That is not a determination that should vary from district judge to district judge. There really is no discretionary determination, and the APA forecloses it. I would also point out there is no real argument in terms of practical considerations about inducing additional appeals. By adopting de novo review. First of all, as a practical matter, in the last 25 years, our research discloses only six Ninth Circuit EEOC subpoena enforcement decisions out of 37 total. So that's only 16 percent, less than its normal 20 percent share of appeals. And one would not expect otherwise. Standard review is not going to deter an appeal. It's going to shift the battleground, as it did here, from fights about whether this is discretionary to whether it's an implied use of an erroneous legal concept. And the problem is, is that because relevance is a question of law and not one of discretion, for the appellate courts to be inquiring into whether there was an abuse of discretion simply distorts appellate decision-making. This should be, this is about vindicating the congressional scheme for the balance of power between agencies and courts. And courts police the legal limits on agency action. That's something that appellate courts are just as capable of doing. And they have to respect discretion. Because if you recognize discretion in the district court, you ipso facto diminish the discretion of the EEOC. I'd also like to address one point on the Fourth Amendment. Both parties say it's not Ornelas and it's De Novo Review that applies, but rather Illinois v. Gates, where this Court held that courts reviewing a magistrate's decision to issue a warrant should review that decision deferentially. Gates supports our position. And the reason is that the analog to the magistrate issuing the subpoena, or issuing the warrant, is the EEOC issuing the subpoena. The district court reviews the magistrate's decision deferentially just as it reviews the EEOC's decision deferentially. But on appeal, the Court of Appeals applies the same deferential Gates standard to the magistrate as the district court, meaning that it engages in De Novo Review of the district court's decision. So I am aware of no support, either in the Fourth Amendment or in administrative law, for this idea of double discretion or double deference. This would be the first time that a district court has been, would be given deference over Fourth Amendment considerations, and where the Court of Appeals is enjoined to give deference both to the district court and the Court of Appeals. I think that simply destroys appellate decision-making, deprives of it any coherence, and this Court should affirm the district or form the Court of Appeals. Thank you. Roberts. Thank you, Mr. Kinnaird. Ms. Ho, you have three minutes remaining. Thank you, Mr. Chief Justice. If I may make one point and then Justice Sotomayor respond to your question. I heard both my friend, Mr. Kinnaird, and my friend from the government make very categorical, absolutist statements about cases that involve testing, and the cases that involve testing pedigree information will always be relevant. This is a case that shows that facts matter, and we don't dispute that in a case where you have a test that mimics job duties or involves subjectivity, perhaps talking to people would shed light on the charge under investigation. But in this case, this evaluation that is at issue, talking to people simply can't shed light on it because it doesn't mimic job duties, and everyone experiences the test the same way. So I think that underscores the importance. Ginsburg. I don't follow on that. I'm still going back to what Judge Watford said. He said, we don't know why these people were terminated. Just the information given was maybe they were terminated for a reason having nothing to do with flunking the test. But what the Ninth Circuit said is — must be responded to is, were the men and women who flunked the test treated the same? And we can't know that without talking to the people, finding out whether they were discharged because of the test or for some other reason. Two responses to that, Your Honor. First, I think it's important to underscore that the data that McLean voluntarily provided to the agency, the data does disclose whether — it discloses the gender, men or women. It discloses who passed or who failed. And it also discloses whether any adverse employment action was taken within 90 days. Yes, but adverse employment action can cover a wide range. It doesn't necessarily mean discharge. And, Your Honor, perhaps that is why the district court in our case did not — did not — said information, depending on what the data shows, may be relevant, depending on the facts that are uncovered. The government's argument is not one based on the facts that have been uncovered. It's been seeking the pedigree information for the 14,000 individuals from the very beginning. Sotomayor, I'm having a very hard time with your answer. I've never heard of any test that's given that's not in some way job-related. And you can basically give a test that says is your hair true blonde or not? No, Your Honor. And even though it has no relationship to the job, you can give that test and fire people basically because they're not true blondes? May I respond, Mr. Chief Justice? No, that's not our position. And I think the distinction we're drawing, we absolutely maintain that there is a business purpose, there's a business necessity for the evaluation. That is a separate question from how the evaluation operates. And the evaluation here does not mimic job duties, which in a line of cases, courts have had concern with subjectivity in those cases, what have you. This evaluation, it does measure, we use it to measure the match between an employee's physical capability and the physical demands of the job. It's how that examination operates. It's how the evaluation operates, the facts on the ground that affects whether talking to people who have taken the evaluation can say something that will shed light on that question. Thank you, counsel. Thank you. Mr. Kinnaird, this Court appointed you to brief and argue this case. As an amicus curiae in support of the judgment below, you have ably discharged that responsibility for which we are grateful. The case is submitted.